UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYSON INTERNATIONAL COMPANY,
LIMITED,

Petitioner,

-against-

PARTNER REINSURANCE EUROPE SE,

Respondent.

1:25-cv-03452 (ALC)

<u>OPINION & ORDER</u>

**ANDREW L. CARTER, JR., United States District Judge:**

Petitioner Tyson International Company, Limited ("TICL") brought this action to vacate part of the arbitration award entered in its favor against Respondent Partner Reinsurance Europe SE ("PartnerRe"), or, in the alternative, to vacate the entire award and remand this matter to the Panel for further proceedings. [1] *See Tyson Int'l Co., Ltd. v. Partner Reinsurance Europe SE*, No. 1:25-mc-00167 (S.D.N.Y. April 18, 2025), Dkt. No. 1, Exhibit 6. Respondent filed a cross-motion to confirm the arbitration award. Dkt. Nos. 20, 21. For the reasons that follow, Petitioner's motion is **DENIED**; Respondent's cross-motion to confirm is **GRANTED**,

**BACKGROUND**

Petitioner TICL is a wholly-owned captive insurer of Tyson Foods Inc. and its family of companies throughout the United States ("Tyson"). Dkt. No. 16-1, Pet. to Vacate Portion of Arbitration Award ("Pet.") ¶ 3. Tyson conducts business in the processing, sale, and marketing of chicken, beef, and pork products. *Id.* Respondent PartnerRe provided reinsurance coverage as a part of Tyson's 2021-2022 captive insurance program, a program through which TICL

---

[1] On August 18, 2025, TICL filed a letter requesting oral argument on the cross motions. Dkt. No. 39. The petitions are fully briefed, and the Court can decide petitions on the papers submitted by the Parties. The request for oral argument is thus **DENIED**.

purchased about 75 reinsurance policies from various reinsurance companies. *Id.* at ¶¶ 27–28. Among the 75 policies was a reinsurance certificate from PartnerRe (the "PartnerRe Contract").

On July 30, 2021, one of Tyson's poultry rendering facilities, located in Hanceville, Alabama ("Hanceville Facility") incurred damage to one of its two main plants due to a fire (the "Fire"). *Id.* at ¶¶ 52, 60. A subsequent review revealed the property was undervalued on the policy due to a misidentification of the asset's age, affecting the facility's replacement cost. *Id.* at ¶¶ 54–56. TICL maintains that this miscalculation was inadvertently caused by Tyson's Property Accounting Team when they registered the "in service date" as 2018, when the property was acquired, instead of its construction date from decades earlier. *Id.* The total insured value ("TIV") of the Hanceville Facility had been placed at $72 million, but the net loss resulting from the Fire was estimated to be between $306 million to $493 million. *Id.* at ¶¶ 62–63. The Contract includes an "Unintentional Errors and Omissions" clause that bars invalidation of the agreement for inadvertent valuation errors. *Id.* at ¶ 65; Ex B at § 14.

PartnerRe sought to rescind its reinsurance contract with TICL. *Id.* at ¶ 70. On May 4, 2023, PartnerRe filed a demand for arbitration against TICL. *Id.* at ¶ 71; ECF No. 23 at 7. At the arbitration hearing, TICL sought an award of $22.5 million from PartnerRe for their share in the reinsurance agreement. *Id.* at ¶ 78. The majority of the arbitration Panel ultimately decided that PartnerRe was not entitled to recission and awarded TICL $1.62 million ("the Award"). *Id.* at 83. The Award was issued on January 17, 2025. *Id.* at 70; ECF No. 21 at 8. TICL argues that the Award of $1.62 million was tantamount to granting PartnerRe recission of the Contract, as it was a fraction of the $22.5 million TICL sought to recover. *Id.* at 83–85. The arbitration Panel identified TICL's misclassification of the property's value not as an "error," but the "result of poor strategic business decisions." *Id.* at 93 (brackets omitted). Petitioner argues that this

determination was in manifest disregard of the Contract provisions and New York law, and criticized the "ambiguity" of the Panel's calculations to reach $1.62 million. *Id.* at 97, 99.

Petitioner has brought this action asserting that the arbitral Panel manifestly disregarded the Parties' written agreements and New York law. Petitioner moves to vacate the award on that basis, or, in the alternative, to vacate the entire award and remand to the Panel for further proceedings. Respondent opposes Petitioner's motion to vacate and has filed a cross-motion requesting confirmation of the Award.

This Court has jurisdiction under 28 U.S.C. § 1332.

## LEGAL STANDARD

### I: Standard for Motion to Vacate Arbitration Award

"It is well established that courts must grant an arbitration Panel's decision great deference." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003); *see also Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 103 (2d Cir. 2013). The Federal Arbitration Act ("FAA") creates a "strong presumption in favor of enforcing arbitration awards." *EB Safe, LLC v. Hurley*, 832 F. App'x 705, 707 (2d Cir. 2020). Thus, a party seeking to vacate an arbitration award must meet a high burden of proof. *Kolel*, 729 F.3d at 102; *see also Tully Constr. Co. v. Canam Steel Corp.*, 684 F. App'x 24, 26 (2d Cir. 2017). The FAA "only allows for vacatur in four circumstances: (1) the arbitral award 'was procured by corruption, fraud, or undue means;' (2) 'there was evident partiality or corruption in the arbitrators;' (3) 'the arbitrators were guilty of misconduct ... by which the rights of any party have been prejudiced;' (4) 'the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.'"

3

*EB Safe, LLC v. Hurley*, 2018 U.S. Dist. LEXIS 82034, *5 (S.D.N.Y. May 15, 2018) (citing 9 U.S.C. § 10(a)).

In addition to the four statutory bases for vacatur, the Second Circuit has held that vacatur may also be granted if "an arbitral award that exhibits a 'manifest disregard of law.'" *Duferco*, 333 F.3d at 388 (citing *Goldman v. Architectural Iron. Co.*, 306 F.3d 1214, 1216 (2d Cir. 2002)); *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 208 (2d Cir. 2002) (same). Review under the manifest disregard standard is "highly deferential" to the arbitrators, and relief on such a claim is therefore "rare." *STMicroelectronics, N. V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011) (citing *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007)). A court can vacate an arbitral award for manifest disregard of the law only if (1) "the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable," and (2) "the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011) (internal quotations omitted); *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004). "It is well-established that the 'manifest disregard' doctrine is one of 'last resort' and is limited 'only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent.'" *J&J Empire Express, Inc. v. FedEx Ground Package Sys., Inc.*, 2025 U.S. Dist. LEXIS 67676, *5 (S.D.N.Y. April 9, 2025) (citing *Jefferies LLC v. Gegenheimer*, 849 F. App'x 16, 17 (2d Cir. 2021) (quoting *Duferco*, 333 F.3d at 389)). Given the strong deference to arbitration outcomes, manifest disregard requires a showing beyond "a mistake of law or a clear error in fact finding." *EB Safe, LLC*, 832 F. App'x at 707.

4

## DISCUSSION

### I.    TICL's Arguments in Support of Vacatur

As discussed in greater detail below, Petitioner fails to allege a statutory basis for vacatur. Therefore, the Petitioner's Motion must **DENIED**.

Petitioner sets forth two main arguments for vacatur: (1) that the panel exhibited a manifest disregard of the law, and/or (2) that the Panel exceeded its authority. Both arguments fail.

In support of its manifest disregard of the law argument, Petitioner argues that in manifest disregard of the law, the arbitration Panel effectively granted PartnerRe recission of the Contract by granting Petitioner an award of $1.62 million rather than the $22.5 million it sought. Dkt. No. 16-2, Pet. Memo of Law in Sup. of Pet. To Vacate at 21. Petitioner further asserts that the Award should be vacated because the Panel acted with manifest disregard of New York law. Specifically, the Panel disregarded New York's scienter requirement for recission, and also disregarded New York's plain language requirement for interpreting the Unintentional Errors & Omissions Clause within the Contract. *Id.* at 20–21. The Court disagrees.

As it relates to TICL's alleged miscalculation, the Panel held that the miscalculation, while material, was not intentional, nor the result of fraud. *Id.* at 20; Dkt. No. 16-3. The Panel further concluded that the incorrect valuation was caused by "methodology that was at least negligent, if not grossly negligent or reckless." *Id.*; Dkt. No. 16-3 at 5. Despite this, TICL argues that, since the Unintentional Errors & Omissions Clause excuses "any unintentional or inadvertent omission, error, [or] incorrect valuation…," the Panel unjustly punished the Petitioner by awarding an amount so low as to effectively grant PartnerRe recission of the Contract. *Id.* at 21. Petitioner contends that, in doing so, the Panel exceeded its powers by modifying the "clear and

unambiguous contractual language" in the Contract, which resulted in the Panel delivering its "own brand of industrial justice." *Id.* at 24.

In support of its argument that the Panel exceeded its authority, Petitioner alleges that the Panel effectively rewrote the parties' agreement by adding an average or co-insurance clause to impose penalties on the policyholder for the undervaluation of property, despite the Contract containing no such provision. *Id.* at 25. Petitioner thus asks the Court to vacate the award, or remand for further proceedings to clarify the alleged ambiguity regarding the award amount. *Id.* at 27–28.

**II.      PartnerRe's Arguments In Support of Confirmation of the Arbitration Award**

Respondent argues that the Panel was not bound by New York law, but instead industry custom and practice, which the Panel applied. Dkt. No. 23 at 1 (Resp. Cross. Mot.). PartnerRe further contends that the Panel was not obligated to explain how it calculated the Award, and that the lack of any such explanation is not a basis for vacatur. *Id.* at 2. Respondent maintains that the Panel was empowered by the Parties' arbitration agreement to determine an equitable award according to industry custom and practice. *Id.* at 3.

The arbitration agreement states, in relevant part, that "[t]he Panel shall interpret this Agreement as an honorable engagement rather than as merely a legal obligation and shall make its decision considering the custom and practice of the applicable insurance and reinsurance business. . . ." *Id.* at 4.[2] In addition, Respondent maintains that it sought alternative relief beyond recission, contrary to TICL's claims. *Id.* PartnerRe asserts that both parties agreed the Panel

---

[2] Although not crucial to the Court's analysis here, it is worth noting that PartnerRe also disputes TICL's allegation that PartnerRe conceded anything by way of the Headman Email, arguing that the email merely offered Headman's "preliminary observations." *Id*. at 5–6. Further, PartnerRe argues that the Panel never determined fraud to be the only grounds for recission, and that the Panel suggested that negligent or reckless misconduct may qualify as such grounds. *Id*. at 6.

could issue equitable relief. *Id.* Finally, Respondent argues that TICL failed to establish manifest disregard of the law or that the Panel exceeded its authority. *Id.*

> **i.** **Manifest Disregard is Not Met Because the Arbitration Panel Was Not Required to Apply New York State Law and Whether the Arbitrators Misconstrued a Contract is Not Open to Judicial Review**

Since Petitioner argues for vacatur on the grounds of manifest disregard, the Court will look to whether (1) "the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable," and (2) "the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it." *Jock.*, 646 F.3d at 122 (internal quotations omitted); *Wallace*, 378 F.3d at 189.

Here, the Contract included an arbitration clause which states:

> The Panel shall interpret this Agreement [the parties' reinsurance contract] as an honorable engagement rather than as merely a legal obligation and shall make its decision considering the custom and practice of the applicable insurance and reinsurance business as promptly as possible following the termination of the hearings.

Dkt. No. 23 at 12; Ex. B ¶13(g).

Courts interpret these provisions broadly and routinely hold that arbitrators enjoy substantial leeway in fashioning whatever remedies they consider suitable. *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 261 (2d Cir. 2003). Moreover, the arbitration agreement does not make any state's law binding; it instead permits the Panel, in its discretion, to apply principles of New York substantive law only insofar as it chooses. *J. B. Harris, Inc. v. Razei Bar Indus., Ltd.*, 37 F. Supp. 2d 186, 190 (E.D.N.Y. 1998) (citing *Silverman v. Benmor Coats, Inc.*, 61 N.Y.2d 299, 308 (1984) (". . .[A]bsent provision in the arbitration clause itself, an arbitrator is not bound by principles of substantive law or by rules of evidence. . . ."); *see also* Dkt. No. 23 at 12; Ex. B ¶¶ 13(f), 17.

In *Prestige Bread Co. of Jersey City, Inc. v. OTG Mgmt., LLC*, the petitioner argued that the arbitrator mishandled the force majeure clause, *inter alia*, so the award should be vacated for "manifest disregard." 2022 WL 3587011, at *2 (S.D.N.Y. Aug. 22, 2022). This Court explained that any mistake in reading the contract is not something a court can review. *Id.*; *see also Benihana Inc. v. Benihana of Tokyo, LLC*, No. 18 CIV. 7506 (PAE), 2019 WL 251729, at *6 (S.D.N.Y. Jan. 17, 2019) ("Whether the arbitrators misconstrued a contract is not open to judicial review." (quoting *Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 203 n.4 (1956))). Thus, it is not within this Court's authority to decide whether the arbitrators erred in their interpretation of the Contract. *See id.* The Parties' honorable engagement clause further excused the arbitration Panel from being bound by New York law and actually granted them broader authority to apply "the custom and practice of the applicable insurance and reinsurance business." Dkt. No. 23; Ex. B ¶13(g).

Accordingly, the Court rejects Petitioner's arguments that (1) the Panel was bound by and manifestly disregarded New York State law, (2) the Panel disregarded the plain terms or the Unintentional Errors and Omissions Clause, and (3) that the Panel "wrote in" a coinsurance or average clause to the Contract. ECF No. 3 at 19, 25–26. As a result, the "manifest disregard" requirements are not met for the Court declines to vacate the Award.

## CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate the arbitration award is **DENIED**. Respondent's cross-motion to confirm the award is **CONFIRMED**. The Clerk of Court is respectfully directed to terminate the pending motions at Dkt. Nos. 20 and 38.

**SO ORDERED**

**Dated: March 31, 2026**
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**